JUNE 11, 1984

No. 83–1021. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION *v.* ALLSTATE INSURANCE CO. Appeal from D. C. S. D. Miss. dismissed for want of jurisdiction.

CHIEF JUSTICE BURGER, with whom JUSTICE O'CONNOR joins, dissenting.

Without explanation, the Court holds today that we lack appellate jurisdiction under 28 U. S. C. § 1252 to review a judgment of a Federal District Court holding an entire Act of Congress unconstitutional as long as the party seeking review merely purports to challenge only the remedy ordered by the District Court *even though the remedy sought on appeal would necessarily require a reversal of the District Court holding that the Act is unconstitutional.** The practical effect of this holding is that by merely addressing a challenge only to the remedy provided by the District Court, a direct appeal to this Court from a decision of a Federal District Court holding an Act of Congress unconstitutional can be frustrated. Notwithstanding the burdens on the Court—which have more than doubled in three decades—I am unwilling to say on the basis of the scant information·before us that Congress

---

*Section 1252 provides in relevant part that

"[a]ny party may appeal to the Supreme Court from an interlocutory or final judgment, decree or order of any court of the United States . . . holding any Act of Congress unconstitutional in any civil action, suit, or proceeding to which the United States or any of its agencies, or any officer or employee thereof . . . is a party."

intended our appellate jurisdiction under § 1252 to be so easily circumvented. Because of the significance of not only the jurisdictional but the underlying substantive issues presented by this appeal, I would set the case for argument, and postpone resolution of the jurisdictional question until argument on the merits.

A brief recitation of the procedural history of this case is necessary to put the Court's holding in perspective. In 1963, Congress passed § 6(d) of the Fair Labor Standards Act (FLSA), 29 U. S. C. § 206(d), known as the Equal Pay Act. The Act vested enforcement authority for the Equal Pay Act in the Secretary of Labor. However, in 1978, as part of an overall effort to centralize authority for enforcement of the various sex discrimination statutes, the Secretary's enforcement authority was transferred to the Equal Employment Opportunity Commission by Reorganization Plan No. 1 of 1978, 3 CFR 321 (1979). The Reorganization Plan was implemented pursuant to the Reorganization Act of 1977, 5 U. S. C. § 901 *et seq.*, which conferred on the President authority to reorganize Executive departments and agencies subject to certain specified congressional limitations. The Reorganization Act required the President to transmit any proposed reorganization plan to both Houses of Congress. § 903. Pursuant to 5 U. S. C. § 906(a), any plan submitted by the President became "effective" at the end of 60 days of continuous session of the Congress unless during that time either House passed a resolution of disapproval or its equivalent.

Reorganization Plan No. 1 was submitted to both Houses of Congress as required by the Reorganization Act. The House roundly rejected a resolution of disapproval. H. R. Res. 1049, 95th Cong., 2d Sess. (1978); 124 Cong. Rec. 11336–11337 (1978). Although a resolution of disapproval was not brought to a vote in the Senate, the Senate Committee on Governmental Affairs unanimously recommended against passage of a resolution of disapproval. S. Res. 404, 95th Cong., 2d Sess. (1978); S. Rep. No. 95–750, pp. 6, 10 (1978). Because neither House of Congress vetoed the Reorganization Plan, the Plan and the transfer of enforcement authority to appellant, the Equal Employment Opportunity Commission, became effective.

In April 1982, appellant filed a complaint against appellee in the United States District Court for the Southern District of Mississippi, alleging that appellee was violating the Equal Pay Act by paying lower wages to female unit supervisors and underwriters than to males performing the same duties. Appellee moved for

summary judgment, contending that the transfer of enforcement authority to appellant under Reorganization Plan No. 1 was invalid because the legislative veto provision in the Reorganization Act was unconstitutional. Appellee maintained that the legislative veto provision was not severable from the balance of the Act and, thus, that the entire Act was invalid; that the transfer of enforcement authority to appellant pursuant to the Act was therefore invalid; and that, as a result, appellant was without authority to enforce the Equal Pay Act.

The District Court granted appellee's summary judgment motion and dismissed appellant's enforcement action. 570 F. Supp. 1224 (1983). The court first held that the one-House veto provision in the Reorganization Act, even though not exercised here, was unconstitutional under *INS* v. *Chadha,* 462 U. S. 919 (1983). 570 F. Supp., at 1229. After a brief inquiry into the legislative history of the Reorganization Act, the court determined that "Congress intended the one-house veto provision to be an integral and inseparable part of the entire Act such that it would limit the power of the President to propose and enact reorganization plans." *Id.,* at 1232. It then concluded that since the legislative veto provision was unconstitutional, "the entire Act must be held unconstitutional," *ibid.:*

> "[T]his court must conclude that *the Reorganization Act of 1977 is unconstitutional.* It necessarily follows that the Reorganization Plan 1 of 1978, which contains the provision allowing the EEOC to enforce the Equal Pay Act, is unconstitutional since the plan was adopted pursuant to the Act." *Id.,* at 1234 (emphasis added).

Last, applying the standards set forth by this Court in *Chevron Oil Co.* v. *Huson,* 404 U. S. 97 (1971), the District Court decided that its decision should be given retroactive effect.

On September 16, 1983, appellant filed in the District Court a notice of appeal to this Court. One month later, appellant filed a notice of appeal to the Court of Appeals for the Fifth Circuit, invoking that court's jurisdiction under 28 U. S. C. § 1291. On November 23, 1983, appellee filed a motion in the Fifth Circuit to dismiss appellant's § 1291 appeal. Appellant filed a memorandum in opposition contending, as the Solicitor General did in *Heckler* v. *Edwards,* 465 U. S. 870 (1984), that a direct appeal to this Court

does not lie where the appellant challenges only the relief provided in the district court, not that court's holding that a particular Act of Congress is unconstitutional. The Fifth Circuit denied appellant's motion to dismiss, but it stayed the appeal pending resolution of the jurisdictional issue by this Court. We in turn held the case pending disposition of *Heckler* v. *Edwards, supra,* in which we held that a direct appeal to this Court under § 1252 does not lie when the appellant challenges only the relief granted, not the district court's holding that an Act of Congress is unconstitutional.

The Solicitor General argues on behalf of appellant that appellant challenges only the relief ordered—dismissal of the enforcement action—not the District Court's holding that the legislative veto provision is unconstitutional. He thus contends, and the Court accepts the argument, that under *Heckler* v. *Edwards, supra,* the appeal should be dismissed for want of jurisdiction. I agree that appellant does not challenge the District Court's holding that the legislative veto provision is unconstitutional. But this is not the question. The controlling question is whether appellant is in fact challenging the District Court's holding that the *entire* Act—not just the legislative veto provision—is unconstitutional.

I see no alternative to the conclusion that appellant is necessarily challenging the constitutional holding. Appellant cannot possibly challenge the dismissal of the enforcement action without at the same time challenging the District Court's holding that the Act in its entirety is unconstitutional. The dismissal and the constitutional holding are inextricably linked; the Act was held unconstitutional, as a result of which appellant was held to be without enforcement authority, and therefore the complaint was dismissed. If the District Court's dismissal is to be overturned, the appellate court must overturn the holding that the Act in its entirety is unconstitutional. In the words of *Heckler* v. *Edwards, supra,* at 880, "the issue on appeal is the holding of statutory unconstitutionality."

The Court purports to rely upon our recent decision in *Heckler* to support its dismissal. However, it is plain that that case is quite different from this one in the most critical respect. In *Heckler,* the Government conceded that it was not challenging the *only* constitutional holding of the District Court in that case. Here, in contrast, while the Government accepts the holding that the legislative veto provision is unconstitutional, it does not con-

cede the correctness of the District Court's holding that the entire Act is unconstitutional. This is precisely the holding it seeks to have reviewed on appeal. Given the obvious difference between this case and *Heckler*, at the very least I am unprepared to say here, without briefing and argument, that jurisdiction does not lie to this Court.

The underlying problem that the Solicitor General's argument is designed to circumvent—and the issue that the Court's unexplained dismissal fails to come to grips with—is that the District Court's invalidation of the Act in its entirety probably could have been—and perhaps should have been—on a statutory, not a constitutional basis. See *INS* v. *Chadha, supra,* at 931–932. The District Court's holding indeed amounts to nothing more than a determination of congressional intent, and it appears to acknowledge as much. 570 F. Supp., at 1230. Had the District Court simply determined, as a matter of statutory construction, that appellant cannot exercise the authority to enforce the Equal Pay Act because Congress did not wish the Act to be operative absent the veto provision, I would agree that dismissal would clearly be compelled under *Heckler* v. *Edwards.* Under these circumstances, it would be clear, as in *Heckler*, that appellant was not challenging the constitutional holding of the District Court since it concedes the validity of the court's holding on the legislative veto provision. But this is not the holding of the District Court. And the mere assertion now by the Solicitor General, and implicitly by the Court, that the holding was in reality one of statutory construction cannot change the fact that the District Court explicitly and unambiguously held the entire Act *unconstitutional.*

I find the Court's readiness to dismiss this case for want of jurisdiction disturbing particularly in light of the importance of the underlying substantive issues. An entire Act of Congress has been held unconstitutional, which itself raises a question of import. There is the question whether the District Court was correct in its finding that the legislative veto provision is nonseverable. There apparently are also lingering questions after *Chadha* on what a court is to do once it finds a legislative veto provision unconstitutional and nonseverable. Finally, there are the substantial questions whether *Chadha* should be applied retroactively, given that the Reorganization Plan was not vetoed by either House and was implemented before *Chadha* was decided, and whether Congress has in any event ratified the transfer

of enforcement authority to the EEOC through appropriations and other statutes validly passed. These matters are appropriate for resolution by this Court.